We're back now with Appeal 23-3415, United States v. Eric Kyereme. We'll hear first from Ms. Gambino. Good morning, Judge Brennan, Judge Rovner, and Judge Kohler. It's my privilege to represent Mr. Eric Kyereme today before this court. We bring two issues before you. The first is whether the district court erred in determining that a charged-but-dismissed count was a proper basis for relevant conduct. And the second is whether or not the judge violated Mr. Kyereme's due process rights when it first agreed to provide a decision on the relevant conduct issue before sentencing and then did not go forward with that agreement, resulting in Mr. Kyereme being unprepared to deal with the judge's decision at sentencing and the judge taking certain aspects of that disadvantage against him in imposing her sentence. So with respect to the first issue, Mr. Kyereme pled guilty on the second day of trial to count one of the indictments against him, which charged a wire fraud involving investors in an alpha investment fund. And the nature of the facts to which he pled guilty was that he had created a newsletter or borrowed from a newsletter by another investor and used that newsletter to provide information to his investors, knowing that that information was false. The second count, which he did not plead guilty to, involved a completely separate transaction between Mr. Kyereme and a man named Da Zhao. And the nature of their transaction did not involve the alpha fund. It involved a direct investment into shares of a going concern, Restore Flow Allographs, in which the Da Zhao wanted to buy shares of that particular concern. And while at first the concern was going to have an open call for capital, when Mr. Kyereme and Mr. Da Zhao were first discussing this, the company later decided it would not go forward with the open call, so Mr. Kyereme offered to sell a portion of his shares to Mr. Da Zhao. So there was no connection between the wire fraud alleged in count one and the conduct in count two. In order for that conduct in count two to be relevant conduct in the case, according to the sentencing guidelines, it had to involve a common scheme and plan, or it had to be connected or otherwise related. And it's our position that it was neither of those two options. First, when considering whether there's a common scheme or plan, you look at the nature of the fraud, which in this case involved separate types of investment vehicles and not the same type of investment vehicle. It involved different alleged victims. There was no common purpose. There was no similar modus operandi between the two or no common accomplice. They were completely separate. As far as them being connected or related, it is Mr. Kyereme's position that they were not. The government took the position and the court adopted it, that because after the purchase of the shares, the transaction between Mr. Kyereme and Mr. Da Zhao, Mr. Kyereme took part of the purchase money that was provided to him by Da Zhao and invested it in his own alpha fund, that that created the connection. However, that cannot be the case because there was no other evidence that that deposit of funds into his own investment account constituted or that he intended it to be funds to cover up the losses that were suffered by his first investors, other than the fact of the deposit. And, in fact, the fraud, if there was one, and it was Mr. Kyereme's contention that there was not, between Mr. Da Zhao and himself would have occurred in him not following the memorandum of agreement that the two had signed and had nothing to do with the disposition of the funds. The fact of the matter was that Da Zhao had purchased shares of funds and he was going to get a return on those funds when the company itself had been bought out or otherwise disposed of. So in the first instance, count two was not properly considered to be relevant conduct to count one. And that was important for two reasons. The first is that it affected Mr. Kyereme's guideline calculations. There was a two-level difference in guidelines depending on whether the amount of money involved in the transaction between he and Da Zhao was included with the loss to the other investors. And so the difference was that the court ultimately determined a guideline, a range of 41 to 51 months or approximately three to four years, and then imposed a sentence of three years, which was slightly below the guideline sentence. Without the Da Zhao funds included, it would have been a guideline range of 33 to 41 months. And during the sentencing itself, the judge clearly said that if she was basing her sentence only on the first count, she would have imposed a sentence of probation for a whole list of reasons that she then went into. So there was a dramatic effect on the sentencing guidelines. And also with respect to restitution, restitution is allowable for the charged offense and not for the relevant conduct. And so restitution to Mr. Da Zhao was ordered as a part of this because it was considered relevant conduct, improperly so, as we set out in our brief. The second issue has to do with the due process violation. Now ordinarily, of course, in a sentencing, a judge is within its discretion to decide the facts and issues on the day of sentencing. What differentiates this case from that particular scenario is that the defendant made clear through his counsel that he wanted a bifurcated sentencing, that because of the odd way that the plea transpired on the second day of trial and without the government insisting on its right to go forward with the trial on count two, they wanted a separate determination, whether the court was going to agree with Mr. Khairim that the count two conduct was not relevant conduct or whether the court was going to agree with the government that it was. And that was important to him for a number of reasons. Most of all because it depended upon the outcome of the hearing. And at the hearing, witnesses testified, including Mr. Khairim himself. And it would have been important for him to know, and in fact it turned out to be extremely important for him to know, whether the judge had credited his testimony or she had not. And the fact that he wasn't able to know this resulted in his attorney not properly preparing him for sentencing. Couldn't the attorney have prepared in the alternative? Because the judge did say when the judge delayed this determination and then said, I'm going to give you a break between my determination and the sentencing, couldn't the attorney have prepared in the alternative and said, if the finding is X, we're going to argue this. If the finding is Y, we're going to argue that. Well, it's certainly a possibility, although I would say the way things transpired in this case, the timing was not sufficient for him to have done that. He was proceeding on the belief that he was going to get this decision before the time of sentencing. And in fact, as sentencing approached, he filed another motion asking that it be delayed specifically so that he could have that decision. A motion which . . . Here's what, forgive me, here's what I'm trying to figure out. When the August 2023 evidentiary hearing wrapped up, Judge Rowland promised that only, she promised only that she would resolve the issues as to the shall transaction at the start of the sentencing hearing. And there was no objection when she announced that plan. So, I mean, in what sense was there a process, you know, a due process, a process violation here? Well, Your Honor, prior to that hearing, she had agreed with Mr. Kyrene's counsel to have this bifurcated hearing and to make it possible for him to have the decision prior to the ultimate sentencing. The expectation of the parties at the time of the hearing was that she would rule at that time. She said she wasn't going to rule at the time, she was going to take some time to consider it. And I believe that Mr. Kyrene's attorney and he were proceeding on the belief that, as she had stated before, they would have the results of that hearing prior to the ultimate sentencing. But at the conclusion of the August hearing, she made clear she was not prepared to rule at that time. She did. But would instead rule, you know, on the shall transaction at the start of the subsequent sentencing hearing. And no objection. So, you know, you speak up if you feel you've been promised a ruling prior to the sentencing date. I agree, Judge. That would have been the better practice in this case. It did not happen. And I believe, based on what transpired subsequently, when Mr. Kyrene's counsel asked, by filing a motion closer to the sentencing date to delay the sentencing for the purpose of having that decision, that he was acting on the belief that things were going to proceed the way the judge had originally agreed when he filed his motion for a bifurcated hearing. Ms. Gambino, we will give you some rebuttal time. Thank you.  Now we'll move Ms. Stern to you for argument on behalf of the government. May it please the Court. Stephanie Stern on behalf of the United States. This court should affirm defendant's sentence because the district court's inclusion of the shall transaction as part of the overall losses was proper, was based on the prior record and evidence, and therefore was not clear error. Defendant argues that this is about relevant conduct. That is incorrect. Defendant pled guilty to a wire fraud, which includes as an element a scheme to defraud. That scheme to defraud was described in the first four pages of the indictment and included specifically allegations related to victim Zhao. After the guilty plea, defendant and the government disputed whether the Zhao transaction should be included as part of the overall scheme to defraud and asked the court to determine that at a later date prior to sentencing. There was an evidentiary hearing on the Zhao transaction. There was subsequent briefing by both parties on the Zhao transaction. And at the sentencing hearing, the court determined two things. First, that the Zhao transaction was properly part of the course of conduct related to the overall scheme. The court specifically said that defendant used Zhao's money to cover up his earlier losses in an attempt to cover up his earlier losses related to the fraud on victims one through three. So the Zhao transaction was related to the earlier fraud because it was a cover-up, an attempt to cover up what he had done before. As to whether or not it was unlawful conduct, the court concluded that it did not credit defendant's testimony, instead felt that it was unlawful conduct. The court based this on the evidence presented during the evidentiary hearing and the argument by both parties, specifically pointing to three documents it found persuasive. First was the membership agreement between defendant and Zhao. This membership agreement made no mention of primrose, which was what defendant claimed he was selling to Zhao. Instead, the membership agreement said that defendant and Zhao would together form a separate company that would purchase units in RFA. So no mention of primrose, only mention of RFA. The other document that the court relied upon in its decision was the primrose operating agreement, which specifically prevented defendant from selling primrose shares to anyone during the time period that he allegedly sold his shares in primrose to Zhao, according to him. And then the third document that the court relied upon was a summary document created by a government agent, which showed that after Zhao sent his money to defendant, defendant shortly thereafter put it into the alpha fund. At the time that defendant put it into the alpha fund, the alpha fund, which had previously had $200,000 of victims' ones through threes money, had gone all the way down to $17,000. So defendant claims that there's no evidence of the cover-up besides the fact that the money was moved into the alpha fund, but it's also the timing of when the money was moved into the alpha fund. At the time, as the court noted, defendant was deeply underwater with relation to his first three investors and was seeking some way to recover from his losses. He took that $100,000 that was moved into the alpha fund, used approximately $84,000 of it to invest in high-risk shares, presumably in hopes that he could make up the money that he had lost. So the court's determination regarding both the course of conduct and including the Zhao transaction in the overall course of conduct and determining that it was unlawful conduct was based on the prior record and therefore was not clear error. How long was the evidentiary hearing and how many witnesses testified? The evidentiary hearing was a one-day hearing. I'm not sure exactly how many hours it took. I know that defendant testified, a government agent testified regarding the finances, and a member of RFA also testified during that hearing. So three witnesses total? Correct, and prior to that hearing, two victims testified. Zhao testified in a deposition, and so did Victor Lang, who were both foreign nationals, and so they testified remotely. And then, of course, there was the documentation that you also referenced. Correct. In subsequent briefings, the government included numerous documents supporting its position that this was unlawful conduct and this was an attempt to cover up his losses from the previous three victims. So we have remote witnesses, we've got the evidentiary hearing, we've got documentation, and then how many rounds of briefing after that are there? Defendant filed a briefing immediately after the evidentiary hearing on the evidentiary hearing, so that was one round of briefing. After that, both parties submitted their version of offense for the PSR. That also discussed the Zhao transaction, and defendant continued to maintain that the Zhao transaction was lawful there. Then after that, there was the sentencing memorandum, where defendant again claimed that this was a lawful transaction and it was just a simple sale. So there had been numerous briefings on the issue, and that didn't even include the motion to dismiss where the same issue was briefed following the first two victims' deposition testimony. In addition, as to prejudice, as this panel discussed previously, based on the timing of the court's statements regarding when it would rule, there was no prejudice here. Rule 32 only requires a determination on a disputed sentencing issue at sentencing. That's what the court did here, so there's no legal rule that requires the court to issue a determination prior to sentencing. The defendant was well aware that he might have to address the Zhao transaction. He might lose on the Zhao transaction at sentencing, or he should have been well aware. In addition to the fact that the district court said at the August hearing that she was going to rule on the date of sentencing, prior to the sentencing date, defendant had filed a motion to extend sentencing, stating that he wanted a ruling on the sentencing issue before the sentencing date. The court denied that request four days before the sentencing hearing. So at this point, defendant knew he was not going to get a decision before the sentencing hearing, had four days to prepare for two alternatives, and should have used that time to prepare for the fact that he might not win on the Zhao transaction issue. Moreover, the prejudice claim, there is no prejudice based on either the fact that defendant could have presented additional evidence, as he claims, or that he might have changed his allocution. Defendant says that if given the opportunity to have more time to ruminate over the district court's decision, he might have presented additional evidence. It seems highly unlikely after a full day evidentiary hearing, after multiple briefings on this very issue, that there is any additional evidence to present, period, let alone any additional evidence that would present clear error regarding the district court's decision. As to changing his representations to the court, it's unclear how this would have changed the outcome. The district court mentioned that she was particularly concerned regarding the Zhao transaction because one, unlike the first three victims, the Zhao transaction was a more direct fraud. The first three victims, he maybe started out with intentions to have a successful investment, and then he got in a hole. With Zhao, the court found that the entire interaction was fraud from the very beginning, and that was very troubling to the court. In addition, the court found it troubling that the defendant had consistently represented to it, including in testimony before the court, that he had done nothing wrong, and based on her review of the documents, the story he was telling her in court, in testimony, was not consistent with what she was seeing with the documents. So she was concerned about that. So even if the district court had issued its ruling, and then the defendant had made a belated allocution regarding the Zhao, it's unclear how that would have changed all the other factors affecting the court's decision. Moreover, looking at the defendant's briefing, it doesn't appear that he's even ready at this point to admit that his conduct related to the Zhao was unlawful. So unless there are any further questions for the court, I would ask that you affirm the district court's decision. Thank you. Thank you very much, Ms. Stern. Ms. Gambino, we'll go back to you. Two minutes for rebuttal. First of all, although there was a scheme to defraud alleged in the first count that included the Zhao, Mr. Kyrene was very specific in not pleading to those facts. So there was no basis for a finding of guilty with respect to the Zhao conduct based on his plea. It's clear also that the court did not understand how the Alpha Fund worked. The money that was deposited into that fund would not cover up any losses, particularly because they were to be distributed and accounted for based on the original shares and quantities and nature of the agreement of those investors. So there was no connection between Da Zhao's transaction and the Alpha Fund transaction. With respect to the documents that were submitted to the court, those documents were used to establish whether the court believed there had been unlawful conduct or not, but not whether those documents did nothing to tie the Da Zhao transaction to the transaction to which he had pled guilty. And four days is simply not enough time to prepare based on what the judge's findings were. And she specifically commented when she was sentencing to him that she had not only admitted, but it was very clear that she didn't understand the nature of that transaction and said that it disturbed her that he didn't mention it in his elocution. And, of course, he didn't mention it in his elocution because he hadn't been prepared for that. And the court had made a number of findings, which I think it would have been or fallen under the category of noticed under Rule 32H, that he should have been aware of before he went into sentencing because she found that he was not credible and made some specific factual findings with which he disagreed. And he would have had an opportunity to rebut those had he had the decision in advance. It's very hard to do something like that on the fly because you don't know how the judge is going to rule, and you can't adequately respond to the judge's concerns when they're very specific and fact-based and come out of a hearing that took place and when you're expecting to have some time to respond to that in a thoughtful and careful manner. So there was prejudice to him because the judge was very upset or seemed very concerned about him not including this whole transaction in the elocution for which he had not been prepared. So we would ask you, Judge, to reverse and remand. Thank you, Ms. Gambino. Thank you, Ms. Stern. The case will be taken to our advisement.